IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| LARRY SCOTT,<br><br>    Plaintiff,<br><br>v.<br><br>SHERIFF RICHARD ROUNDTREE and RICHARD RUSSELL,<br><br>    Defendants. | Civil Action File No.<br>1:20-CV-159<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS** |

**PLAINTIFF'S REPSONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Plaintiff Larry Scott, and submits this Response in Opposition to Defendants' Motion for Summary Judgment, respectfully showing as follows.

**STATEMENT OF MATERIAL FACTS**

On December 23, 2020, Plaintiff Larry Scott was delivering food with his wife, Katherine Taylor, for Postmates. Defs' SOMF ¶ 1. Richmond County Sheriff's Deputy Richard Russell pulled Plaintiff over for a traffic stop because Plaintiff's vehicle registration was expired, and Plaintiff's vehicle had dark tint on the windows. Defs SOMF ¶ 2. Deputy Russell asked Scott to step out of his vehicle and frisked him for weapons. Russell Dep. 36:4-12, 39:23-25, 40:1-7. Scott did not have any weapons or other items on him that caused Russell any concern. Russell Dep. 36:4-12, 39:23-25, 40:1-7. After frisking Scott, Russell tried to run Scott's information through his patrol car computer, but was unable to retrieve any information. Russell Dep. 40:20-24. Plaintiff confirms his date of birth three times with Deputy Russell. Defs' SOMF ¶ 5.

Russell believes it would be unreasonable for a police officer to begin the use of force on a subject at the same time as making an initial verbal command for the subject to put his hands behind his back.  Rusell Dep. 21:14-23.  When Russell was unable to retrieve Scott's information on his computer, he told Scott to turn around and put his hands behind his back; within the next two seconds, Russell grabbed Scott and aggressively forced his body against Russell's police vehicle. Body Camera Video, 04:51-04:54.

Immediately before he was grabbed by Russell, Scott began to turn around, and stated, "let me give my wife my money."  Body Camera Video,  04:51- 04:52.  At the same time, Scott reached for the money in his left pocket, and very slowly, he took two steps toward his wife. Body Camera Video at 04:41 – 04:52.

Scott did not realize he was being arrested until after what happened next, when Russell violently grabbed him and slammed him against the police car.  Scott Dep., 12:6-12, 15:3-7.  Russell used his left hand to hold Scott's left arm behind his back, and at the same time, Russell used his right elbow to force Larry's head and neck onto the hood of his patrol car. Body Camera Video, 04:58; Cell Phone Video at 00:01 – 00:03; Russell Dep. 69:22-25, 70:1.

Despite telling Scott to put his hands behind his back, Russell would not allow Scott to maneuver his right arm to do so.  Scott Dep., 10:12-15, 11:1-12, 18:1; Taylor Decl. ¶ 5.  Cell phone video footage taken by Scott's wife, Katherine Taylor, documents Scott attempting to place his right hand behind his back as Russell immediately stops him, and proceeds to slam Scott's head and body onto the hood of the police car.  Cell Phone Video at 00:02 – 00:03.

Russell repeatedly slammed Scott's head onto the hood of the patrol vehicle.  Scott Dep. 15:6-7.  Next, Russell wrapped his arm around Scott's neck and began to choke him.  Cell Phone

Video at 00:06 – 00:07; Scott Dep. 13:2-4. With his arm around Scott's throat, Russell then slammed Scott's body onto the ground, and forced his knee into Scott's upper back as he lay prone on the pavement. Cell Phone Video at 00:06 – 00:07. Next, Russell began to twist Scott's arm into an unnatural position, in an deliberate effort to inflict additional pain. Cell Phone Video, 00:17 – 00:27; Russel Dep. 80:25, 81:1-22.

Scott's wife, Katherine Taylor, was an eye-witnessed the entire interaction between Scott and Russell to this point. Taylor Decl. ¶ 4. In her declaration, Taylor has testified that Scott did not make any verbal or physical threats of any kind to Deputy Russell before Russell attacked him. Taylor Decl. ¶ 4. Furthermore, she explains that her husband did not offer any resistance to Russell's verbal commands nor to his physical attacks. Taylor Decl. ¶ 4.

Taylor did witness Deputy Russell yell at Scott to "stop resisting" and "place your hands behind your back" when Scott was not resisting, and even though Russell had restrained Scott's arms from movement and made it impossible for him to comply. Taylor Decl. ¶ 5. Since the incident, Taylor is also a first-hand witness to Scott's ongoing chronic pain from the incident in his back, left shoulder, pelvis, and upper left leg. Taylor Decl. ¶ 6.

On the day of the incident, Scott did not have any active warrants, and according to Russell, Scott was not committing any crime other than driving without a driver's license. Russell Dep., 39:4-10. Before Russell's initiated physical force, Scott had not done anything that would have led Russell to believe that Scott posed a physical threat to Russell's safety. Russell Dep., 45:8-12; 72:12-24, 78:10-14, 82:13-25, 97:1-18. Russell agrees that any verbal threats made by Scott occurred after Russell had already employed the use of force and had his knee on Scott's back as he lay on the pavement. Russell Dep. 98:11-14. Notably, Russell has a

documented history of failing to distinguish between compliant and noncompliant subjects. Russell Dep. at 114-125.

Russell did not tell Scott why he decided to place him under arrest until after employing force as described above. Russell Depo. 56:12-15. Scott has testified that he did not offer any resistance to Russell as he employed the terrifying force described above. Scott Dep. 10:12-25, 11:1-6.

Scott was burned by his own cigarette as Russell slammed him against the patrol car. Scott Dep. 10:16-23. Scott admits that he began using cuss words as the cigarette was burning him. *Id.* Russell never asked Scott to put out the cigarette. *Id.*

On the ride to jail, Scott told Russell that he was injured. But Russell ignored his complaints by increasing the volume on his car radio. Scott Dep. 13:20-25. Scott continues to have a painful knot in the middle of his back where Russell pressed on him with his knee. Scott Dep. 13:2-7. Scott also still has a knot on his hip from the incident. Scott Dep. 15:15-16. Moreover, Scott has suffered and continues to suffer psychologically from the incident, including through depression and constant nightmares. Scott Dep. 17:5-25, 18:11-16. Scott's injuries from the incident also continue prevent him from engaging in activities physical activities he used to enjoy. Scott Dep. 19:5-14. As noted by the Defendants, Plaintiff presented to University Hospital on December 26, 2019, three days after the incident, where he received x-rays and was evaluated for bruising to the elbow and a hematoma to the hip. *See* Defs. SOMF ¶ 26.

## **SUMMARY JUDGMENT STANDARD**

"At summary judgment, we cannot simply accept the officer's subjective version of events, but rather must reconstruct the event in the light most favorable to the non-moving party

and determine whether the officer's use of force was excessive under those circumstances." *Fils v. City of Aventura*, 647 F.3d 1272, 1288 (11th Cir. 2011). "When the movant's and non-movant's version of events differs substantially, the Court is required to view the facts and draw reasonable inferences "in the light most favorable to the party opposing the [summary judgment] motion." *See Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *States v. Deibold, Inc.*, 369 U.S. 654, 655 (1962)). In qualified immunity cases, this usually means adopting the plaintiff's version of the facts. *Scott*, 550 U.S. at 378.

"When the nonmovant has testified to events, [the court] do[es] not ... pick and choose bits from other witnesses' essentially incompatible accounts (in effect, declining to credit some of the nonmovant's own testimony) .... Instead, when conflicts arise between the facts evidenced by the parties, [the court] credit[s] the nonmoving party's version." *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005). "Federal Rule of Civil Procedure 56 and countless decisions applying it express the modern rule that a case should be put to the jury if there is any genuine issue of material fact, including one created solely by the testimony of a party." *Feliciano*, 707 F.3d at 1247. *See also Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1160 (11th Cir. 2012) ("Our case law recognizes that, even in the absence of [corroborative] evidence, a plaintiff's own testimony may be sufficient to withstand summary judgment.").

This means in determining whether an officer is entitled to qualified immunity where the facts are in dispute, the Court must accept the Plaintiff's version of the facts. *Fuller v. Metro. Atlanta Rapid Transit Auth.*, No. 1:16-CV-02963-AT, 2018 WL 8867801, at *4 (N.D. Ga. Sept. 28, 2018). "[T]he question we ask is whether, under [the plaintiff's] version of the facts, [the officer] behaved reasonably in the light of the circumstances before him." *Galvez v. Bruce*, 552

F.3d 1238, 1243 (11th Cir. 2008) (citation and internal quotation marks omitted). Notably, the excessive force "area is one in which the result depends very much on the facts of each case." *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004). Excessive-force claims are fact-specific; whether the force an officer uses is *reasonable* "requires careful attention to the facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989).

Similarly, at the summary judgment stage it is the Court's responsibility "not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Anderson*, 477 U.S. at 249 (1986)) (internal quotation marks omitted). "Even where the parties agree on the facts, if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Glasscox*, 903 F.3d 1207, 1212 (11th Cir. 2018); *see also, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("Credibility determinations ... are jury functions, not those of a judge.").

## ARGUMENT AND CITATION OF AUTHORITIES

### A. OFFICER RUSSELL USED EXCESSIVE FORCE

"The use of excessive force in executing an arrest is a species of unreasonable seizure, so the Fourth Amendment prohibits it." *Hinson v. Bias*, 927 F.3d 1103, 1117 (11th Cir. 2019). In assessing whether Deputy Russell used excessive force against Mr. Scott, "we must consider whether the officer's conduct is objectively reasonable in light of the facts confronting the officer." *Id.* (quotation marks omitted). However, "courts do not speculate as to what government officials subjectively thought but assess their actions for objective reasonableness

under established constitutional law." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1315 (11th Cir. 2017).

Stated succinctly, "the amount of force used by an officer in seizing and arresting a suspect must be reasonably proportionate to the need for that force." *Id.*, quoting *Stephens v. DeGiovanni*, 852 F.3d 1298, 1324 (11th Cir. 2017). The following factors guide that analysis: "(1) the severity of the crime; (2) whether the individual poses an immediate threat to the safety of the officers or others; (3) whether the individual actively resists or tries to evade arrest by flight; (4) the need for force to be applied; (5) the amount of force applied in light of the nature of the need; and (6) the severity of the injury." *Id.*

Under these factors, a jury may reasonably conclude that an officer used excessive force where the arrest is for minor, non-violent offenses, the arrestee does not resist and poses no serious threat to anyone's safety, and as a result of the unnecessary force the arrestee suffers an injury. *Longino v. Henry Cty., Georgia*, 791 F. App'x 828, 838 (11th Cir. 2019). Viewing the evidence in the light most favorable to the Plaintiff, there is sufficient evidence in the record for a jury to reasonably conclude that Officer Russell used excessive force during the arrest of Larry Scott.

### (1) The Severity of the Crime.

The first factor weighs heavily in Plaintniff's favor. In the underlying arrest, Mr. Scott was charged with obstruction and driving without a valid driver's license. In reviewing the "severity of the crime" as to these exact same charges, the Eleventh Circuit has plainly held, "[t]he investigation of neither of these misdemeanors rises to the level of criminal conduct that should have required the use of force." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1321–22 (11th

Cir. 2017); *see also*, *Fuller v. Metro. Atlanta Rapid Transit Auth.*, No. 1:16-CV-02963-AT, 2018 WL 8867801, at *5 (N.D. Ga. Sept. 28, 2018) ("Disorderly conduct is not a serious offense."). Accordingly, the crimes charged against Scott did not justify Russell's use of force in this case.

### (2) Whether the individual poses an immediate threat to the safety of the officers or others.

The record is devoid of any evidence that Scott was a threat to Russell or anyone else in this case. The evidence shows Scott was unarmed. He made no physical or verbal threats whatsoever before or during the time that Deputy Russell attacked him, slammed his head against the hood of his patrol car, choked him, threw him to the ground, and twisted his arm for the sole purpose of inflicting pain. Taylor Decl. ¶ 4; Russell Dep., 45:8-12; 72:12-24, 78:10-14, 82:13-25, 97:1-18; Scott Dep. 10:12-25, 11:1-6. On the day of the incident, Scott did not have any active warrants, and according to Russell, Scott was not committing any crime other than driving without a driver's license. Russell Dep., 39:4-10. Nor did Scott have any weapons or other items that caused Russell any concern for his safety. Russell Dep. 36:4-12, 39:23-25, 40:1-7.

Put simply, Scott did not pose any threat to anyone when Russell engaged in the violent uses of force described above. And the evidence shows no objective basis for Russell, or anyone else, to think otherwise. Accordingly, the non-existent threat posed by Scott did not justify Russell's use of force in this case.

### (3) Whether the individual actively resists or tries to evade arrest by flight.

Viewing the evidence in the light most favorable to the Plaintiff, Scott never resisted arrest, nor did he attempt to flee the scene by flight. While Russell may contend that Scott tried to leave after being told to put his hands behind his back, the video evidence shows Scott

actually took just two away from Russell, both very slowly, and at least of which was taken in the process of turning around as indicated by Russell. Body Camera Video at 04:41 – 04:52. Moreover, the evidence shows that Scott did not realize that he was being arrested until after Russell began his violent use of force against Scott. Scott Dep., 12:6-12, 15:3-7.

Mr. Scott and eye-witness Katherine Taylor have testified that Scott offered no resistance as Russell manhandled him to the ground. Taylor Decl. ¶ 4.to; Scott Dep. 10:12-25, 11:1-6. And there is testimonial and video evidence showing that Russell forcibly prevented Scott from complying with his "commands" to place his hands behind his back. Taylor Decl. ¶ 5; Cell Phone Video at 00:02 – 00:03; Scott Dep., 10:12-15, 11:1-12, 18:1; Taylor Decl. ¶ 5.

Accordingly, under Scott's version of events, any alleged pulling away by Scott during the incident was unintentional and non-violent, and therefore ultimately cannot have not justified Russell's greater use of force. *Fuller v. Metro. Atlanta Rapid Transit Auth.*, No. 1:16-CV-02963-AT, 2018 WL 8867801, at *5 (N.D. Ga. Sept. 28, 2018) ("Plaintiff's actions in committing fare evasion, failing to immediately put his cellphone away on command (without knowing he was under arrest), and backing away in surprise when Sgt. McWilliams grabbed his wrist were all undertaken in a noncombative and nonviolent manner. This type of disorderly conduct "without force does not connote a level of dangerousness that would justify a greater use of force."); *see also*, *Fils v. City of Aventura*, 647 F.3d 1272, 1288 (11th Cir. 2011) ("resisting arrest without force does not connote a level of dangerousness that would justify a greater use of force.").

Viewing the facts in the light most favorable to Scott, Russell's violent use of force was wholly unnecessary because Scott did not resist at all. But even if Scott turned his body away

from Russell and toward his motor vehicle, Scott did nothing to indicate that he would initiate violence or flee the scene, and a reasonable jury could conclude it was therefore entirely unnecessary for Russell to slam Scott's ahead against the patrol car, throw Scott to the ground, and pin Scott to the pavement while painfully twisting his arm. *See Patel v. City of Madison, Alabama*, 959 F.3d 1330, 1341 (11th Cir. 2020) ("So even if the previous steps Patel took towards home and away from the officers reasonably gave the officers the impression that Patel was evading them, Patel was not being 'fractious' at the time Parker took him to the ground. And a reasonable jury could conclude it was unnecessary for Parker to forcefully throw Patel down.").

**(4) The Need for Force to be Applied.**

Very similar to the previous, this factor also works in Scott's favor because there is absolutely no evidence indicating that Scott posed any threat to the arresting officer or anyone else, such that force was needed. Similarly, when the facts are construed in the light most favorable to the Plaintiff, there is no indication that Scott actively resisted or attempted to flee. Even though Russell had lawful authority to effect a custodial arrest and to use a reasonable amount of force to subdue and secure Scott, there is no discernable reason, let alone any legitimate law enforcement need, for Officer Rusell to slam Scott's head against the vehicle and then tackle him to the ground with his arm around Scott's neck. *See, e.g.*, *Wade v. Doe*, No. 5:19-CV-00406-TES, 2020 WL 7130791, at *9 (M.D. Ga. Dec. 4, 2020) ("Taking Plaintiff's sworn testimony as true, as the Court must when analyzing a motion for summary judgment, the Court must assume that Plaintiff was not violent. True, he disobeyed an order to drop a water hose *once*, but then, according to his testimony, he fully complied with Defendant Sinclair's second order … it is difficult to accept that a reasonable officer (operating under Plaintiff's

version of events) would find hitting Plaintiff in the mouth, after he complied with a direct order, to be a reasonable use of force.").

There was no need for violent force in this case. Russell began using force by grabbing Scott and slamming him against the patrol car, yet without informing Scott the reason why he was being arrested, much less why he was being attacked. *See Cheatham v. Wright*, No. 1:18-CV-3154-SCJ-LTW, 2019 WL 10631255, at *3 (N.D. Ga. Sept. 16, 2019) ("Plaintiff states that he had no time to flee, comply, or resist arrest before Deputy Silva's use of force. Therefore, there is a genuine issue of material fact with respect to whether Deputy Silva's use of force violated Plaintiffs Fourth Amendment rights."). Here, Scott did not know he was being arrested until he was already being subjected to Russell's excessive force. Under an objective review of the evidence, the force employed by Officer Russell was completely unnecessary.

**(5) The Amount of Force Applied in Light of the Nature of the Need.**

In *Stephens v. DeGiovanni*, 852 F.3d 1298, 1326 (11th Cir. 2017), the arresting officer was denied qualified immunity where "forceful chest blows" and "throwing [the arrestee] against the car-door jamb" were **"unnecessary for a compliant, nonaggressive arrestee."** In *Andrews v. Scott*, 729 F. App'x 804, 810–11 (11th Cir. 2018), the Court held there was no apparent need for force at the time of the arrest, since immediately before the arrest the plaintiff was sitting in a truck and answering the officer's questions, except for the question about her name. And even though she refused to answer this question, the plaintiff was not fleeing or resisting the officers. And she had not been asked to get out of her vehicle. Nevertheless, the officer "aggressively pull[ed] Andrews out of the vehicle," "forcefully turn[ed] her around," "slammed [her] against the car door," and "cuff[ed] her hands behind her back." As with the previous factors, viewing

the evidence in the light most favorable to the Plaintiff, no force was needed whatsoever for Russell to effectuate his arrest. Accordingly, the violent force employed, as described amply above, far exceeded any need.

**(6) The severity of the injury.**

Defendants argue that Deputy Russell only used *de minimis* force against Scott. However, the force was not *de minimis* in this context because Scott "required medical treatment for force that was used against [him] when the circumstances warranted none." *See Clarke v. Scott*, 746 F. App'x 925, 928–29 (11th Cir. 2018) (force was not *de minimis* in case involving minor injuries where no hostility or violence was shown by the arrestee before force was used). In *Clark*, the Court explained cases granting summary judgment on the issue of *de minimis* force almost always involve non-compliance with an officer's lawful command, an officer's response to the use of force by the arrestee, or an officer's reasonable belief that the arrestee was dangerous and posed a threat to the officer or bystanders. *Id*.; *see also*, *Koger v. Carson*, No. 20-12078, 2021 WL 1206065, at *4 (11th Cir. Mar. 30, 2021) ("De minimis injury does not necessarily mean the force used was <u>de minimis</u>."); *Lee*, 284 F.3d at 1200 ("that [the plaintiff] did not suffer greater injury to her head as a result of it being slammed against the trunk of a car does not alone render the force used <u>de minimis</u>").

In fact, "an officer need not inflict a compensable injury on a plaintiff to be liable for excessive force under the Fourth Amendment." *Gomez v. Jackson*, No. 1:18-CV-00963, 2020 WL 4048061, at *5 (N.D. Ga. July 20, 2020); citing *Stephens v. DeGiovanni*, 852 F.3d 1298, 1328 n.33 (11th Cir. 2017) ("[I]njury and force are only imperfectly correlated, and it is the latter that ultimately counts."); *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) ("To

conclude that the absence of some arbitrary quantity of injury requires automatic dismissal of an excessive force claim improperly bypasses the core judicial inquiry, which is the nature of the force."); *Slicker*, 215 F.3d at 1231–32 ("[A] § 1983 plaintiff alleging excessive use of force is entitled to nominal damages even if he fails to present evidence of compensable injury.").

In *Saunders v. Duke*, 766 F.3d 1262 (11th Cir. 2014): the plaintiff sold oxycodone pills to an undercover officer. After the sale was complete, officers arrested the plaintiff and told him not to move, and he "immediately complied with the command without resisting or attempting to flee." *Id.* at 1265. The officers pulled the plaintiff from a vehicle "and pushed him down on the hot pavement in order to handcuff him." *Id.* Then the officers held him down against the hot pavement even though he was not resisting, posing a threat, or attempting to flee. The plaintiff told the officers he was getting burned, and he tried to lift his face off the pavement to keep from getting burned. One of the officers slammed the plaintiff's face onto the pavement, and the plaintiff started bleeding. The Eleventh Circuit concluded that the "force was unnecessary, disproportionate, and constitutionally excessive." *Id.* at 1268.

In this case, the evidence shows Scott suffered physical and psychological harm that required medical attention and more than a year of symptoms, including physical and mental pain and suffering. Chronic pain and psychological trauma are not injuries that should be taken lightly by anyone, including Defendants in this case.

Moreover, even if Russell's actions did not result in severe physical harm, his actions were not proportional to the situation. *Roberts v. Kahl,* 844 F. App'x 160, 164 (11th Cir. 2021) ("The severity of injury may be evidence of how much force was used, but we must evaluate the justification for the use of force, not the result of that force."). Courts in this Circuit have

explained, "To conclude ... that the absence of 'some arbitrary quantity of injury' requires automatic dismissal of an excessive force claim improperly bypasses [the] core [judicial] inquiry," which is the nature of the force. *Id.* at 39, 130 S.Ct. 1175. And as was held in *Slicker,* 215 F.3d at 1231–32, a plaintiff claiming excessive force under the Fourth Amendment can seek nominal damages if he does not have compensable injuries. *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014). Therefore, this final factor also weighs in Plaintiff's favor in this case.

### B. OFFICER RUSSELL DOES NOT HAVE QUALIFIED IMMUNITY.

In the Eleventh Circuit, it has long been established that the "unprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment." *Fils v. City of Aventura*, 647 F.3d 1272, 1289 (11th Cir. 2011). It is also well established that "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." *Hadley*, 526 F.3d at 1330. These holdings provided Russell with "fair warning" that an officer violates the Fourth Amendment when he inflicts violence upon a non-hostile suspect accused of a minor crime who has not resisted arrest. *See Longino v. Henry Cty., Georgia*, 791 F. App'x 828, 838 (11th Cir. 2019); *Clarke v. Scott,* 746 F. App'x 925, 929 (11th Cir. 2018); *Fils,* 647 F.3d at 1289, 1292.

The Eleventh Circuit has "repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." *Patel v. City of Madison, Alabama*, 959 F.3d 1330, 1343–44 (11th Cir. 2020) ("If a jury believes Patel's version of the facts—under which Patel was not resisting and was complying with the officers'

commands when Parker executed the swift and decisive leg sweep—it could reasonably find that Parker knowingly violated this principle when he threw Patel to the ground.").

In addition, the Court has previously concluded that an officer's gratuitous use of force against a docile, non-resisting suspect constitutes demonstrates the constitutional violation with "obvious clarity," obviating the need for previous analogous case law. *See Stephens v. DeGiovanni*, 852 F.3d 1298, 1328 (11th Cir. 2017); *Patel v. City of Madison, Alabama*, 959 F.3d 1330, 1343–44 (11th Cir. 2020) ("Here, when we credit Patel's side of the story, no reasonable officer could have thought that sweeping Patel's legs out from under him and throwing him to the ground headfirst was a reasonable use of force. Patel was somewhat frail and was not resisting or attempting to flee, so the law clearly forbade Parker's forceful takedown under the circumstances.").

In this case, viewing the evidence in the light most favorable to Scott, the evidence shows Scott was not violent. He did not disobey orders. He did not resist arrest. And he posed no risk to Officer Russell or anyone else. Moreover, Scott is of small stature, and is physically frail and/or fragile due to a prior, permanent spine injury. Scott depo., pg. 20, ln. 20-21. Under these circumstances, the law clearly forbade Russell's forceful takedown and infliction of pain.

### C. STATE LAW CLAIMS

Under Georgia law, "[a]n officer is entitled to official immunity for discretionary acts performed in his official capacity unless he acted with actual malice or intent to injure." *Dukes v. Deaton*, 852 F.3d 1035, 1046 (11th Cir. 2017) (citing *Murphy v. Bajjani*, 282 Ga. 197, 203 (2007)); *see* Ga. Const. art. I, § II, para. IX. "Actual malice ... denotes express malice, i.e., a deliberate intention to do wrong and does not include implied malice, i.e., the reckless disregard

for the rights or safety of others." *Murphy*, 282 Ga. at 203 (internal quotation marks and citation omitted). "A deliberate intention to do wrong ... must be the intent to cause the harm suffered by the plaintiffs." *Id.*

Plaintiff contends there is sufficient evidence to raise a question of fact as to whether Russell acted willfully or with malice in allegedly slamming Scott's head onto the hood of his patrol car, choking him, slamming him to the ground, and intentionally inflicting pain by twisting his arm into an unnatural position, all while Scott was not resisting arrest. These actions do not show merely negligence on the part of Officer Russell, but indicate an intent to cause injury the Plaintiff.

"Plaintiff's state law claims are based on the same excessive force as his Fourth Amendment claim. A reasonable jury could find that Defendants acted with actual malice or intent to injure because they used extreme physical force against Plaintiff, when the evidence viewed most favorably to Plaintiff, shows the use of force was unjustified." *Fuller v. Metro. Atlanta Rapid Transit Auth.*, No. 1:16-CV-02963-AT, 2018 WL 8867801, at *8–9 (N.D. Ga. Sept. 28, 2018). Accordingly, because a genuine dispute of material fact exists about whether Defendant acted with actual malice or intent to injure, he should not be entitled to official immunity as a matter of law. The Motion for Summary Judgment should be denied.

### D.   CLAIMS AGAINST DEFENDANT SHERIFF ROUNDTREE

After discovery and review, Plaintiff concedes the evidence does not support the claims brought against Sheriff Richard Roundtree in this case, and Plaintiff will dismiss his claims against Sheriff Roundtree as appropriate.

Respectfully submitted his 18th day of June 2021.

*/s/J. Kyle Califf*
J. Kyle Califf
Georgia Bar No. 276148

Califf Law Firm LLC
3540 Wheeler Rd., Ste. 603
Augusta, GA 30909
Phone: 706-530-1212
Facsimile: 706-223-0256
kcaliff@califflawfirm.com

# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# AUGUSTA DIVISION

| | |
|---|---|
| LARRY SCOTT,<br><br>    Plaintiff,<br><br>v.<br><br>SHERIFF RICHARD ROUNDTREE and RICHARD RUSSEL,<br><br>    Defendants. | Civil Action File No.<br>1:20-CV-159 |

## **CERTIFICATE OF SERVICE**

    This is to certify that the within and foregoing upon the following counsel of record by e-mail and/or USPS First Class Mail, with adequate postage to ensure delivery, and addressed as follows:

Tameka Haynes<br>
Randolph Frails<br>
Frails & Wilson LLC<br>
211 Pleasant Home Road, Suite A1<br>
Augusta, GA 30907<br>
randyfrails@frailswilsonlaw.com<br>
thaynes@frailswilsonlaw.com

    This 18th day of June 2021.

*/s/J. Kyle Califf*
J. Kyle Califf
Georgia Bar No. 276148

Califf Law Firm LLC
3540 Wheeler Rd., Ste. 603
Augusta, GA 30909
Phone: 706-530-1212
Facsimile: 706-223-0256
kcaliff@califflawfirm.com