IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

LARRY SCOTT,

   Plaintiff,

vs.

SHERIFF RICHARD ROUNDTREE, and
RICHARD RUSSELL,

   Defendants.

CASE NO.: 1:20-CV-159

# PLAINTIFFS' STATEMENT OF MATERIAL FACTS

COMES NOW Plaintiff Larry Scott, and files this Statement of Material Facts, showing the Court the following:

1. On December 23, 2020, Plaintiff Larry Scott was delivering food with his wife, Katherine Taylor, for Postmates. Defs SOMF ¶ 1.

2. Richmond County Sheriff's Deputy Richard Russell pulled Plaintiff over for a traffic stop because Plaintiff's vehicle registration was expired, and Plaintiff's vehicle had dark tint on the windows. Russell Dep. 28:16-18; Body camera video at 2:15-2:30.

3. Russell asked Scott to step out of his vehicle and frisked him for weapons. Russell Dep. 36:4-12, 39:23-25, 40:1-7.

4. Scott did not have any weapons or other items on him that caused Russell any concern. Russell Dep. 36:4-12, 39:23-25, 40:1-7.

5. After frisking Scott, Russell tried to run Scott's information through the computer in his patrol vehicle, but was unable to retrieve any information. Russell Dep.

1

40:20-24.

6. Plaintiff confirms his date of birth three times with Deputy Russell. Body Camera Video at 4:00, 4:25-4:29, 4:48-4:50.

7. Russell believes it would be unreasonable for a police officer to begin the use of force on a subject at the same time as making an initial verbal command for the subject to put his hands behind his back. Rusell Dep. 21:14-23.

8. When Russell was unable to retrieve Scott's information on his computer, Russell told Scott to turn around and put his hands behind his back. Within the next two seconds, Russell grabbed Scott and aggressively forced his body against Russell's police vehicle. Body Camera Video, 04:51-04:54.

9. Immediately before he was grabbed by Russell, Scott began to turn around while stating, "let me give my wife my money." Body Camera Video, 04:51- 04:52.

10. At the same time, Scott reached for the money in his left pocket, and slowly took two steps while turning in the direction of his wife. Body Camera Video at 04:41 – 04:52.

11. Scott did not realize he was being arrested until after Russell grabbed him and forced him against the vehicle. Scott Dep., 12:6-12, 15:3-7.

12. Russell used his left hand to hold Scott's left arm behind his back; at the same time, Russell used his right elbow and forearm to force Larry's head and neck down onto the hood of his patrol car. Body Camera Video, 04:58; Cell Phone Video at 00:01 – 00:03; Russell Dep. 69:22-25, 70:1.

13. Russell would not allow Scott to put his right arm behind his back, despite yelling, "put your hands behind your back." Scott Dep., 10:12-15, 11:1-12, 18:1; Taylor Decl. ¶ 5 (Dkt. 24 at p. 3).

14. Cell phone video footage taken by Katherine Taylor documents Scott attempting to place his right hand behind his back, as Russell immediately stops him by forcing Scott's head and body down onto the police vehicle. Cell Phone Video at 00:02 – 00:03.

15. Russell then repeatedly slammed Scott's head onto the hood of the patrol vehicle. Scott Dep. 15:6-7.

16. Russell then wrapped his arm around Scott's neck and began choking him. Cell Phone Video at 00:06 – 00:07; Scott Dep. 13:2-4.

17. Russell then slammed Scott to the ground. Cell Phone Video at 00:06 – 00:07.

18. Russell then forced his knee into Scott's upper back as he lay prone on the pavement, and at the same time, Russell begins twisting Scott's arm into an unnatural position, in a deliberate effort to inflict additional pain. Cell Phone Video, 00:17 – 00:27; Russel Dep. 80:25, 81:1-22.

19. Scott's wife, Katherine Taylor, was an eye-witnessed the entire interaction between Scott and Russell leading to Scott's arrest. Taylor Decl. ¶ 4 (Dkt. 24 at p. 3).

20. Taylor has declared that Scott did not make verbal or physical threats of any kind to Deputy Russell before Russell attacked him. Taylor Decl. ¶ 4 (Dkt. 24 at p. 3).

21. Taylor has declared that Scott did not offer any resistance to Russell's verbal commands, nor any resistance to Russell's physical attack. Taylor Decl. ¶ 4 (Dkt. 24 at p. 3).

22. Taylor did witness Deputy Russell yelling "stop resisting" and "place your hands behind your back," even though Scott was not resisting, and even though Russell had restrained Scott's arms from movement as Russell was forcing him against

the police vehicle. Taylor Decl. ¶ 5 (Dkt. 24 at p. 3).

23. Taylor has witnessed Scott's experiencing frequent pain in his back, shoulder, pelvis, and upper left leg since the incident. Taylor Decl. ¶ 6 (Dkt. 24 at p. 3).

24. On the day of the incident, Scott did not have any active warrants, and according to Russell, Scott was not committing any crime other than driving without a driver's license. Russell Dep., 39:4-10.

25. Before Russell's used physical force against Scott, Scott had not done anything that would have led Russell to believe that Scott posed a physical threat to Russell's safety. Russell Dep., 45:8-12; 72:12-24, 78:10-14, 82:13-25, 97:1-18.

26. Any verbal threats made by Scott were made *after* Russell had already employed the use of force by slamming Scott's head onto the patrol car, choking Scott, throwing him to the ground, and pinning him on ground with his knee while twisting his arm to intentionally inflict more pain. Russell Dep. 98:11-14.

27. Russell did not tell Scott why he decided to place him under arrest until after employing force against Scott as described above. Russell Depo. 56:12-15.

28. Russell has a documented history of failing to distinguish between compliant and noncompliant subjects. Russell Dep. at 114-125.

29. Scott did not resist Russell as he slammed Plaintiff's head against the vehicle, choked him, tackled him to the ground, and forced his knee onto his upper back while twisting his arm. Scott Dep. 10:12-25, 11:1-6.

30. Scott was burned by his own cigarette after Russell grabbed him. Scott Dep. 10:16-23.

31. Scott began cussing as he was being burned by the cigarette. *Id*.

32. Russell never asked Scott to put out the cigarette. *Id*.

4

33. Scott continues to have a knot in the middle of his back where Russell pressed his knee into Scott. Scott Dep. 13:2-7.

34. On the ride to jail, Scott told Russell that he was injured, but Russell ignored him and turned up the car radio. Scott Dep. 13:20-25.

35. Scott still has a knot on his hip from the incident. Scott Dep. 15:15-16.

36. Scott has suffered and continues to suffer psychologically from the incident, including through depression and constant nightmares. Scott Dep. 17:5-25, 18:11-16.

37. Scott's injuries from the incident continue to prevent him from engaging in activities he used to enjoy. Scott Dep. 19:5-14.

38. Plaintiff presented to University Hospital three days after his arrest and was diagnosed with a hematoma of the thigh, elbow contusion. Defs. SOMF ¶ 26.

Respectfully submitted his 18th day of June 2021.

*/s/J. Kyle Califf*
J. Kyle Califf
Georgia Bar No. 276148

Califf Law Firm LLC
3540 Wheeler Rd., Ste. 603
Augusta, GA 30909
Phone: 706-530-1212
Facsimile: 706-223-0256
kcaliff@callifflawfirm.com

# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# AUGUSTA DIVISION

| | |
|---|---|
| LARRY SCOTT,<br><br>   Plaintiff,<br><br>v.<br><br>SHERIFF RICHARD ROUNDTREE and RICHARD RUSSEL,<br><br>   Defendants. | Civil Action File No.<br>1:20-CV-159 |

## CERTIFICATE OF SERVICE

This is to certify that the within and foregoing upon the following counsel of record by e-mail and/or USPS First Class Mail, with adequate postage to ensure delivery, and addressed as follows:

Tameka Haynes
Randolph Frails
Frails & Wilson LLC
211 Pleasant Home Road, Suite A1
Augusta, GA 30907
randyfrails@frailswilsonlaw.com
thaynes@frailswilsonlaw.com

This 18th day of June 2021.

/s/J. Kyle Califf
J. Kyle Califf
Georgia Bar No. 276148

Califf Law Firm LLC
3540 Wheeler Rd., Ste. 603
Augusta, GA 30909
Phone: 706-530-1212
Facsimile: 706-223-0256
kcaliff@califflawfirm.com

6