IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

LARRY SCOTT,                          *
                                      *
        Plaintiff,                    *
                                      *
        v.                            *        CV 120-159
                                      *
SHERIFF RICHARD ROUNDTREE and         *
RICHARD RUSSELL,                      *
                                      *
        Defendants.                   *

---

## O R D E R

---

Before the Court is Defendants Sheriff Richard Roundtree ("Sheriff Roundtree") and Deputy Richard Russell's ("Deputy Russell") (collectively, the "Sheriff Defendants") motion for summary judgment. (Doc. 19.) For the following reasons, the summary judgment motion is **GRANTED**.

## I. BACKGROUND

Plaintiff filed the underlying suit against the above-named Defendants and others on November 12, 2020. (Compl., Doc. 1.) The Complaint alleges: (1) a 42 U.S.C. § 1983 claim against Deputy Russell, claiming excessive force in violation of the Fourth and Fourteenth Amendments; (2) assault and battery claims against Deputy Russell under Georgia state law; (3) a 42 U.S.C. § 1983 supervisory liability claim against Sheriff Roundtree and John

Does 1-5; and (4) a 42 U.S.C. § 1983 municipal liability claim against Sheriff Roundtree and Richmond County.[1]   (Id. at 10-16.) Plaintiff seeks all damages allowed by the law, punitive damages to punish and deter the Defendants, interest at the maximum legal rate, costs and attorneys' fees, and any other relief the Court deems just and proper.   (Id. at 19.)

An overview of the underlying facts is as follows.   On December 23, 2020, Plaintiff and his wife, Katherine Taylor, were delivering food for Postmates.   (Defs.' Statement of Undisputed Material Facts ("SUMF"), Doc. 19-1, ¶ 1; Pl.'s SUMF, Doc. 25-1, ¶ 1.)  Deputy Russell, a Richmond County Sheriff's Deputy, pulled Plaintiff over for having an expired vehicle registration, and because the vehicle's window tint was too dark.   (Defs.' SUMF, ¶ 2; Pl.'s SUMF, ¶ 2.)  Plaintiff told Deputy Russell he left his wallet, cash, and card at home and Deputy Russell asked him to step out of his vehicle and frisked him for weapons.   (Defs.' SUMF, ¶¶ 3-4; Pl.'s SUMF, ¶ 3.)  Deputy Russell then asked Plaintiff to confirm his date of birth three times, tried to run his information through the computer system in his patrol vehicle, and was unable to retrieve any matching information.   (Defs.' SUMF, ¶¶ 5-6; Pl.'s SUMF, ¶ 5-6.)

---

[1] Richmond County and John Does 1-5 have previously been dismissed as Defendants in this case.   (See Doc. 14.)

Being unable to confirm his identity, Deputy Russell decided to detain Plaintiff. (Defs.' SUMF, ¶ 6; Pl.'s SUMF, ¶ 8.) Deputy Russell told Plaintiff to put his hands behind his back, and Plaintiff started walking towards his car stating he wanted to give his wife his money. (Defs.' SUMF, ¶¶ 7-8; Pl.'s SUMF, ¶ 8-10; Body Camera Video ("Body Cam"), Doc. 18, at 4:52-4:54.) Deputy Russell again told Plaintiff to put his hands behind his back, and when he did not comply, Deputy Russell grabbed him and put him against the hood of his patrol vehicle. (Body Cam, at 4:54-4:56.) Deputy Russell told Plaintiff two more times to put his hands behind his back, and when he still refused, used a balance displacement technique to put Plaintiff onto the ground. (Defs.' SUMF, ¶ 14; Pl.'s SUMF, ¶ 17; Body Cam, at 5:11-5:20.) Once Plaintiff was on the ground, Deputy Russell instructed him at least four more times to put his hands behind his back to no avail. (Defs.' SUMF, ¶ 17; Body Cam, at 5:24-5:34.) Deputy Russell proceeded to put his knee on Plaintiff's back and used an arm bar maneuver to handcuff him. (Defs.' SUMF, ¶ 15; Body Cam, at 5:20-5:38.)

Plaintiff asserts Deputy Russell repeatedly slammed Plaintiff's head onto the hood of the patrol vehicle, wrapped his arm around his neck and choked him, and twisted his arm into an

3

unnatural position in a deliberate effort to inflict pain.[2] (Pl.'s SUMF, ¶¶ 15-18.)  Ms. Taylor asserts that Plaintiff did not make verbal or physical threats of any kind before Deputy Russell attacked him and that Plaintiff did not offer any resistance to Deputy Russell's verbal commands or physical attack. (Id. ¶¶ 20-21.)  However, the Sheriff Defendants claim Plaintiff refused to comply with Deputy Russell's instructions, used various expletives repeatedly towards him, tried to pull away from him, and was not compliant with the officer. (Defs.' SUMF, ¶¶ 10-13.)  After Deputy Russell had Plaintiff handcuffed and under control, he kneeled beside him and held his arm until backup officers arrived to assist in moving Plaintiff into the patrol vehicle. (Id. ¶¶ 20, 22; Body Cam, at 5:36-7:20.)

It was later discovered that Plaintiff provided Deputy Russell with an incorrect birthdate. (Defs.' SUMF, ¶ 23.) Plaintiff was charged with obstruction and driving with a suspended or revoked license, and those charges are still pending. (Id. ¶ 24.)  Plaintiff presented to University Hospital three days after this incident and was diagnosed with thigh and elbow contusions. (Id. ¶ 26; Pl.'s SUMF, ¶ 38.)  Plaintiff asserts these injuries prevent him from engaging in activities he used to enjoy, and that

---

[2] The Court notes that it also reviewed the Cell Phone Video provided by Plaintiff. (Cell Phone Video, Doc. 24.)  However, the video begins once Plaintiff has already been put onto the hood of the car and does not contain the audio of Deputy Russell's commands.

he continues to suffer psychologically from the incident through depression and constant nightmares. (Pl.'s SUMF, ¶¶ 36-37.)

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, motions for summary judgment are granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of fact is 'material' if . . . it might affect the outcome of the case . . . [and it] is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259-60 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992)). The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The Defendants here do not bear the burden of proof at trial, and therefore may "satisfy [their] initial burden on summary

judgment in either of two ways." McQueen v. Wells Fargo Home
Mortg., 955 F. Supp. 2d 1256, 1262 (N.D. Ala. 2013) (citing
Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-16 (11th Cir.
1993)). First, the Defendants "may simply show that there is an
absence of evidence to support the [Plaintiff's] case on the
particular issue at hand." Id. (citation omitted). If this
occurs, Plaintiff "must rebut by either (1) showing that the record
in fact contains supporting evidence sufficient to withstand a
directed verdict motion, or (2) proffering evidence sufficient to
withstand a directed verdict motion at trial based on the alleged
evidentiary deficiency." Id. (citation omitted). Or second,
Defendants may "provide affirmative *evidence* demonstrating that
the [Plaintiff] will be unable to prove its case at trial." Id.
(citation omitted and alterations in original).

Additionally, the Southern District of Georgia's Local Rules
require:

> [I]n addition to the brief, there shall be annexed to
> the motion a separate, short, and concise statement of
> the material facts as to which it is contended there
> exists no genuine dispute to be tried as well as any
> conclusions of law thereof. Each statement of material
> fact shall be supported by a citation to the record.
> All material facts set forth in the statement required
> to be served by the moving party will be deemed to be
> admitted unless controverted by a statement served by
> the opposing party.

L.R. 56.1, SDGa. "Parties may not, by the simple expedient of
dumping a mass of evidentiary material into the record, shift to

the Court the burden of identifying evidence supporting their respective positions." Preis v. Lexington Ins. Co., 508 F. Supp. 2d 1061, 1068 (S.D. Ala. 2007). Essentially, the Court has no duty "to distill every potential argument that could be made based upon the materials before it on summary judgment." Id. (citing Resol. Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995)). Accordingly, the Court will only review materials the Parties specifically cited and legal arguments they expressly advanced. See id.

In this action, the Clerk of Court provided Plaintiff notice of the summary judgment motion, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 20.) For that reason, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. Plaintiff responded to the motion for summary judgment (Doc. 25) and the Sheriff Defendants replied (Doc. 27). The time for filing materials has expired, the issues have been thoroughly briefed, and the motion is now ripe for consideration. In reaching its conclusions herein, the Court has evaluated the Parties' briefs, other submissions, and the evidentiary record in the case.

## III. DISCUSSION

The Sheriff Defendants move for summary judgment on all counts, asserting various arguments: (1) to the extent Plaintiff brings federal claims against the Sheriff Defendants in their official capacities, those are not cognizable under § 1983; (2) Plaintiff fails to establish a prima facie claim of excessive force under § 1983; (3) Plaintiff fails to establish a prima facie claim against Sheriff Roundtree under § 1983; (4) the Sheriff Defendants are entitled to qualified immunity for Plaintiff's federal claims; (5) any state law claims against Deputy Russell in his official capacity are subject to sovereign immunity; (6) Plaintiff fails to state claims of assault and battery; and (7) any state law claims against Deputy Russell in his individual capacity are subject to qualified immunity. (Doc. 19-2.)   The Court addresses these arguments below.

### A. Sheriff Roundtree

As a preliminary matter, Plaintiff states that "[a]fter discovery and review, [he] concedes the evidence does not support the claims brought against Sheriff Richard Roundtree in this case, and [he] will dismiss his claims against Sheriff Roundtree as appropriate." (Doc. 25, at 16.)   Based on this, the Court finds the claims against Sheriff Roundtree shall be **DISMISSED**.

Accordingly, the only remaining claims are against Deputy Russell and include: Count I, alleging excessive force under

§ 1983; and Count II, alleging assault and battery under Georgia law.

## B. Excessive Force

Plaintiff claims Deputy Russell used excessive force against him in violation of his constitutional rights under the Fourth and Fourteenth Amendments.

### 1. Legal Standard

It is well-established that the Fourth Amendment is made applicable to the states by the Fourteenth Amendment. Terry v. Ohio, 392 U.S. 1, 8 (1968) (citation omitted). The Fourteenth Amendment, though, does not provide an independent source of recovery in this context. Lloyd v. Leeper, 451 F. Supp. 3d 1314, 1322-23 (M.D. Fla. 2020). Because the Complaint does not assert an independent basis for recovery under the Fourteenth Amendment, Deputy Russell is entitled to judgment as a matter of law on Plaintiff's § 1983 claim premised on the Fourteenth Amendment. Only the Fourth Amendment's prohibition against unreasonable searches and seizures can be the basis of a § 1983 claim. See Brown v. City of Huntsville, 608 F.3d 724, 737 (11th Cir. 2010). Thus, the Court will continue its analysis of Plaintiff's claim based on his Fourth Amendment rights.

The Fourth Amendment affords individuals the right to be secure in their persons against unreasonable seizures. U.S. CONST. amend. IV. This Amendment "encompasses the right to be free from

excessive force during the course of a criminal apprehension." Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009).   To establish a Fourth Amendment excessive force claim, a plaintiff "must allege (1) that a seizure occurred and (2) that the force used to effect the seizure was unreasonable." Corbitt v. Vickers, 929 F.3d 1304, 1315 (11th Cir. 2019), cert. denied, 141 S. Ct. 110 (2020) (citation and internal quotations omitted).

Deputy Russell moves for summary judgment on Plaintiff's excessive force claim for numerous reasons.   First, he argues he acted as an arm of the state, not a person subject to suit in his official capacity under § 1983.   (Doc. 19-2, at 2-3.)   Further, Deputy Russell argues Plaintiff fails to establish a prima facie claim because Plaintiff posed an immediate threat to his safety. (Id. at 3-5.)   Deputy Russell had no way of knowing if weapons were in the vehicle Plaintiff was attempting to reach, Plaintiff continually tried to pull away from Deputy Russell, actively resisted arrest, and refused to place his hands behind his back, so Deputy Russell argues he used a small and necessary amount of force to handcuff Plaintiff. (Id.)   Finally, Deputy Russell argues he is entitled to qualified immunity.  (Id. at 6-9.)

The Court notes that it is unclear from the Complaint whether Plaintiff is suing Deputy Russell in his individual or official capacity, so the Court will explore the arguments pertaining to both.

2. <u>Arm of the State – Official Capacity</u>

Deputy Russell asserts that only persons are subject to liability under § 1983. (<u>Id.</u> at 2.) Therefore, as a sheriff's deputy, he was acting as an "arm of the state," so the suit is against the state and not him as a person. (<u>Id.</u>) Plaintiff did not respond to this argument in his brief in opposition. (<u>See</u> Doc. 25.)

"When a non-moving party fails to address particular claims in the moving party's motion for summary judgment but responds to other arguments, the non-moving party abandons these claims." <u>Johns v. CSX Transp., Inc.</u>, 210 F. Supp. 3d 1357, 1373 (M.D. Ga. 2016) (citations omitted). Based on this, to the extent Plaintiff intended to bring claims against Deputy Russell in his official capacity, those claims have been abandoned.[3]

---

[3] Sheriffs in Georgia are "arms of the state" for Eleventh Amendment purposes. <u>Temple v. McIntosh Cnty.</u>, No. 2:18-cv-91, 2019 WL 287482, at *4 (S.D. Ga. Jan. 22, 2019). Eleventh Amendment protection also extends to deputy sheriffs. <u>Grech v. Clayton Cnty.</u>, 335 F.3d 1326, 1336 (11th Cir. 2003). Moreover, this District has confirmed that Eleventh Amendment protections for sheriffs and deputies reach beyond the jailhouse to other traditional law enforcement functions, including arrests. <u>Temple</u>, 2019 WL 287482, at *4. Based on this, Deputy Russell, as a sheriff's deputy executing an arrest, is entitled to the protections of the Eleventh Amendment because any recovery against him would operate against the State of Georgia, and the State of Georgia has not waived its immunity or consented to be sued. Therefore, to the extent Plaintiff asserted any claims against Deputy Russell in his official capacity, they would have been dismissed.

### 3. Prima Facie Claim of Excessive Force

Deputy Russell argues Plaintiff failed to establish a prima facie claim of excessive force.  Plaintiff asserts Deputy Russell's use of force was excessive because it was not a severe crime, Plaintiff was not a threat to anyone and he made no physical or verbal threats before he was attacked, he never resisted arrest or attempted to flee the scene, and therefore "no force was needed whatsoever."  (Doc. 25, at 7-12.)  Further, Plaintiff argues his resulting chronic pain and psychological trauma should not be taken lightly.  (Id. at 13.)

There is no debate that a seizure occurred here, so the only issue for the Court to consider is whether the force used to affect the seizure was unreasonable.  See Corbitt, 929 F.3d at 1315.  To determine the reasonableness of force used, a court is required:

> to evaluate the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, whether the suspect is actively resisting or attempting to flee, the need for the application of force, the extent of the injury inflicted, and whether the force used was reasonably proportionate to the need for the force.

Crenshaw v. Lister, 556 F.3d 1283, 1288 (11th Cir. 2009).

### a. Severity of the Crime at Issue

The Parties do not dispute that the crimes at issue, obstruction and driving without a valid license, were not serious. (See Doc. 27, at 1.)  However, this alone is not decisive.

b. *Suspect as an Immediate Threat to Officer Safety*

Deputy Russell argues Plaintiff posed an immediate threat because he could not confirm his identity, he attempted to reach his vehicle, he continually pulled away, and he actively resisted arrest. (Doc. 19-2, at 4; Doc. 27, at 2.) Deputy Russell further argues that he had no way of knowing if there were weapons in the vehicle Plaintiff was walking towards. (Doc. 19-2, at 4.) Plaintiff rebuts these assertions, arguing he did not pose a threat to anyone. (Doc. 25, at 8.)

Despite Plaintiff's allegations, the Body Cam indisputably shows that Plaintiff started to walk away when he was told to put his hands behind his back. (Body Cam, at 4:53.) Additionally, he told Deputy Russell he was going to give his wife his money even though he had previously told Deputy Russell he left his wallet, cards, and cash at home. (Id.; Doc 27, at 2.)

Plaintiff cites no case law to support his contention that he did not pose a threat to Deputy Russell. On the other hand, Deputy Russell provides a very similar example through Williams v. City of Montgomery, 839 F. App'x 356 (11th Cir. 2020). In Williams, the officers believed a man was attempting to deceive them about his identity and the Eleventh Circuit found it was reasonable to seize him before he could retreat into his house and potentially arm himself. Id. at 362. Similarly here, the Court finds Plaintiff posed an immediate threat to Deputy Russell's safety

when he walked towards his car, because there was no way to know what he might do if he got there.

### c. *Actively Resisting or Attempting to Flee*

As stated above and confirmed by the Body Cam, Plaintiff walked away when Deputy Russell told him to put his hands behind his back. Further, Deputy Russell told Plaintiff at least eight more times to put his hands behind his back before he successfully handcuffed him. (Body Cam, at 4:52-5:33.) Plaintiff did not obey Deputy Russell's commands, and therefore the Court finds he actively resisted arrest.[4]

Plaintiff argues he did not know he was being arrested until after Deputy Russell used violent force. (Doc. 25, at 9.) The video evidence again discredits this assertion because before any force was used, Deputy Russell instructed Plaintiff to put his hands behind his back. (Body Cam, at 4:52.) Plaintiff cites three cases to support his contention that pulling away was unintentional and non-violent, and therefore did not justify the greater use of force.

First, in Fuller v. Metro. Atlanta Rapid Transit Auth., the plaintiff was never told he was under arrest or given any verbal commands by the officer before he was tased, so the Court found

---

[4] Plaintiff again relies on the Cell Phone Video for his assertions. However, when the footage shows Deputy Russell pushing Plaintiff onto the hood of the car, you cannot hear Deputy Russell's commands that Plaintiff was disregarding. (See Cell Phone Video, at 0:03.) Therefore, the video is not a complete depiction of the situation.

tasing him constituted excessive force.   No. 1:16-cv-02963, 2018 WL 8867801, at *5 (N.D. Ga. Sept. 28, 2018).   That is distinguishable from this case because Plaintiff was told to put his hands behind his back and given verbal commands by Deputy Russell.   Plaintiff also cites Fils v. City of Aventura, in which the plaintiff was tased when the officer approached him, but the officer did not issue any warnings or directives for him to move, and therefore the Eleventh Circuit found excessive force.   647 F.3d 1272, 1289 (11th Cir. 2011).   Once again, those facts do not align with this case because Deputy Russell and Plaintiff were already interacting when the alleged force was used, so the force was not blindly applied without prior warnings or directives. Finally, Plaintiff relies on Patel v. City of Madison, claiming he did nothing to indicate he would initiate violence or flee the scene just by turning toward his vehicle.   959 F.3d 1330 (11th Cir. 2020).   However, in Patel, the plaintiff did not resist the officers, and the Eleventh Circuit found he could not understand much English, so he was unable to understand any commands given to him.   Id. at 1339.   Once again, that does not align with the facts here because Plaintiff was able to understand the commands, the video shows he continually ignored Deputy Russell's instructions, and he failed to comply or act calmly.   In fact, from the moment Deputy Russell stops Plaintiff from walking to his car, he became enraged, cursed, and yelled insults at Deputy Russell.   Plaintiff

15

did not act as a calm and compliant arrestee. Based on these findings, the Court concludes Plaintiff actively resisted arrest.

> d. *Need for the Application of Force*

"The right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Stephens v. DeGiovanni, 852 F.3d 1298, 1321 (11th Cir. 2017) (internal quotations and citations omitted). In this instance, since the Court already found Plaintiff actively resisted arrest, it also finds that force was needed to handcuff Plaintiff. Plaintiff argues he did not know he was being arrested until he was already subject to force; however, the Body Cam shows he was told to put his hands behind his back before he was touched, so that argument is incorrect. (Doc. 25, at 11; Body Cam, at 4:52-4:55.)

> e. *Extent of the Injury Inflicted*

Plaintiff presented to University Hospital three days after this incident and was diagnosed with contusions, or bruises, on his right thigh and left elbow and was released for self-care at home. (Doc. 19-5.) Plaintiff alleges he suffered physical and psychological harm that endured for more than a year and required medical attention. However, the hospital record mentioned above is the only evidence of any treatment and shows minimal injuries. The Eleventh Circuit has repeatedly held "the typical arrest involves some force and injury," which is consistent with the

situation here.   See, e.g., Mobley v. Palm Beach Cnty. Sheriff Dept., 783 F.3d 1347, 1355 (11th Cir. 2015).   The Court finds the extent of the injury inflicted in this case is minimal.

   f. *Proportionality of Force Used to the Need for Force*

   Plaintiff cites to Stephens to argue that when a plaintiff is not fleeing or resisting, no force is needed to effectuate an arrest, so no force was needed here.   (Doc. 25, at 11-12.)   As the Court outlined above, Plaintiff did resist arrest, so the use of force was warranted.   As to the proportionality, Deputy Russell used a balance displacement technique and an arm bar technique to get Plaintiff onto the ground and to secure him with handcuffs. Deputy Russell represents these are common police maneuvers, the altercation lasted only twenty-two seconds, and the force ceased once Plaintiff was handcuffed.   (Doc. 19-2, at 5.)

   The Court must determine whether the force used was "reasonably proportionate to the need for that force."   Scott v. Palmer, 210 F. Supp. 3d 1303, 1313 (N.D. Ala. 2016).   Based on the fact Plaintiff repeatedly refused to comply with Deputy Russell's orders, the Court finds the force used was proportionate to the need to restore order and ensure compliance with the officer's orders.   "[A] court must take into account that 'police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.'"   Harris v.

Morris, No. 418-040, 2020 WL 1482444, at *5 (S.D. Ga. Feb. 5, 2020) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)).  The Court finds Deputy Russell acted reasonably in this situation and that the force used against Plaintiff was proportionate to that which was necessary.

g. *Conclusion*

Using the factors outlined above, Plaintiff has failed to state a prima facie claim of excessive force against Deputy Russell under the Fourth Amendment.  Nevertheless, the Court will briefly address Deputy Russell's qualified immunity argument as well.

4. Qualified Immunity

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Grider v. City of Auburn, 618 F.3d 1240, 1254 (11th Cir. 2010) (quoting Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)) (alterations and internal quotation marks omitted).  "Qualified immunity from suit is intended to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Id. (citation and internal quotation marks omitted).  In other

words, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." <u>Robinson v. Payton</u>, 791 F.3d 824, 829 (8th Cir. 2015) (citing <u>Davis v. Hall</u>, 375 F.3d 703, 712 (8th Cir. 2004)).

The Court uses a two-step burden shifting analysis to determine whether a defendant is entitled to qualified immunity. "[T]he government official must first prove that he was acting within his discretionary authority." <u>Gonzalez v. Reno</u>, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing <u>Vinyard</u>, 311 F.3d at 1346). To determine whether a government official acted within the scope of their discretionary authority, courts consider whether the official "(a) perform[ed] a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." <u>Holloman ex rel. Holloman v. Harland</u>, 370 F.3d 1252, 1265-66 (11th Cir. 2004) (citation omitted). In this case, the Court is satisfied Deputy Russell acted within his discretionary authority when the alleged conduct took place. Deputy Russell was in process of arresting Plaintiff, which is a legitimate job-related function. <u>See Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2001) ("[T]here can be no doubt that [the officer] was acting in his discretionary capacity when he arrested [the plaintiff].").  The Court therefore moves to the second step of the analysis.

19

"Once the defendant[] establish[es] [he was] acting within [his] discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006) (quoting Lumley v. City of Dade City, 327 F.3d 1186, 1194 (11th Cir. 2003)). Accordingly, the Court must turn to the evidence to determine whether Plaintiff demonstrated Deputy Russell is not entitled to qualified immunity. Bowen v. Warden Baldwin State Prison, 826 F.3d 1312, 1319 (11th Cir. 2016). Plaintiff must allege facts to prove Deputy Russell's conduct violated a constitutional right. See Lee, 284 F.3d at 1194. "If a constitutional right would have been violated under the plaintiff's version of the facts, the court must then determine 'whether the right was clearly established.'" Id. (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).

Plaintiff alleges Deputy Russell violated his constitutional rights by using excessive force against him. However, as the Court has already found, Plaintiff has not made out a prima facie claim of excessive force and his allegations are contradicted by the Body Cam footage. Based on this, Plaintiff failed to prove Deputy Russell violated a constitutional right, and Deputy Russell is entitled to qualified immunity.

5. Conclusion

The Court finds Plaintiff failed to establish a prima facie claim of excessive force based on the circumstances and that Deputy Russell is entitled to qualified immunity. Based on these findings, Deputy Russell is entitled to summary judgment on Plaintiff's excessive force claim.

## C. Assault and Battery Under Georgia Law

The only remaining claims are the assault and battery claims against Deputy Russell. (See Compl., at 11-12.) Deputy Russell moves for summary judgment on these claims based on sovereign immunity, qualified immunity, and because Plaintiff fails to state a claim. (Doc. 19-2, at 9-11.) Based on Plaintiff's response to the motion for summary judgment, the Court finds Plaintiff's claims for assault and battery are against Deputy Russell in his individual capacity and therefore does not consider the sovereign immunity argument. (See Doc. 25 at 15-16.)

### 1. Official Immunity – Individual Capacity

Deputy Russell asserts he is entitled to qualified immunity as to Plaintiff's state law claims. (Doc. 19-2, at 10; Doc. 27, at 9.) Qualified immunity applies to officials with regard to federal constitutional claims; however, official immunity applies to officials with regard to state law claims. Despite this distinction, case law in Georgia has used these terms interchangeably. See Cameron v. Lang, 549 S.E.2d 341, 344 (Ga.

21

2001) ("The doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity.") (citation omitted); <u>Weaver v. City of Statesboro</u>, 653 S.E.2d 765, 770 (Ga. Ct. App. 2007) (outlining the doctrine of qualified immunity protection under the heading of "official immunity"); <u>Gilbert v. Richardson</u>, 452 S.E.2d 476, 481 (Ga. 1994) ("[O]fficial or qualified immunity offers limited protection from suit to governmental officers and employees."). Based on these terms being using interchangeably, and the fact that Plaintiff's response disputes official immunity, the Court analyzes this defense as official immunity.

Official immunity protects county officers and employees from certain state-law claims when the claim arises out of the performance of a discretionary function. See <u>Keele v. Glynn Cnty.</u>, 938 F. Supp. 2d 1270, 1308-09 (S.D. Ga. 2013). However, "[i]t does not protect officials who negligently perform or fail to perform their ministerial functions" or those who "act with actual malice or intent to cause injury in the performance of their official functions." <u>Id.</u> at 1309 (citations and quotations omitted). Actual malice requires "more than reckless disregard for human life," and instead requires "a deliberate intention to do wrong." <u>Id.</u> (citations and quotation omitted).

The Court already determined Deputy Russell acted within his discretionary authority during the alleged conduct. "Employees of

a county sheriff's department are immune from liability for negligent acts that are discretionary rather than ministerial." Schmidt v. Adams, 438 S.E.2d 659, 660 (Ga. Ct. App. 1993) (citation omitted). Plaintiff argues that Deputy Russell slammed his head onto the car, choked him, slammed him on the ground, and intentionally inflicted pain, which indicates an intent to cause injury to him. (Doc. 25, at 16.) Despite these contentions, the Court previously determined excessive force was not used, and that Deputy Russell did not exercise or act with excessive force when arresting Plaintiff. Accordingly, the Court does not find Deputy Russell acted with actual malice or a deliberate intent to injure, and therefore he is entitled to official immunity as to Plaintiff's state law claims.

2. Prima Facie Claims of Assault and Battery

Furthermore, Deputy Russell argues Plaintiff failed to state claims for assault and battery. (Doc. 19-2, at 9-10.) "In Georgia, when an officer makes a lawful arrest, 'he can use no more force than is reasonably necessary under the circumstances.'" Hill v. Mull, No. 5:04-CV-329, 2006 WL 3022280, at *13 (M.D. Ga. Oct. 23, 2006) (quoting Mullis v. State, 27 S.E.2d 91, 98 (Ga. 1943)). "[A]n individual commits the tort of battery if he intentionally makes harmful or offensive contact with another, and he commits the tort of assault if he intentionally causes another

to fear or to apprehend a battery." Id. (citing Vazquez v. Smith, 576 S.E.2d 59, 61 (Ga. Ct. App. 2003)).

As the Court previously established, the right to make an arrest conveys the right to use some degree of physical coercion. See Stephens, 852 F.3d at 1321. It was already found that this was a lawful arrest, so the touching was not unlawful, and the Court has not found any evidence that it was excessive under the circumstances. Plaintiff's allegations are not supported by the evidence and fail to state prima facie claims for these torts. (See Compl., at 11-12.)

### 3. Conclusion

Plaintiff has failed to state prima facie claims of assault and battery. Even if he did, Deputy Russell has official immunity. Therefore, Deputy Russell is entitled to summary judgment as to Plaintiff's state law assault and battery claims.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the Sheriff Defendants' motion for summary judgment (Doc. 19) is **GRANTED.** The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Deputy Russell and Sheriff Roundtree, **TERMINATE** all other pending motions, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 20th day of December, 2021.

_____

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA